Nicholas Neidzwski, OSB No. 172584
BOATLAW, LLP
23 Bellwether Way, Suite 101
Bellingham, Washington 98225
Telephone:  (360) 671-6711
Fax:   (360) 647-2943
Email:   nick@boatlaw.com
    Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **ELIANE ALVES SILVA**,<br><br>    Plaintiff,<br><br>v.<br><br>**AMERICAN CRUISE LINES, INC. and THOMAS DAY,**<br><br>    Defendants. | Case No. _____<br><br>**SEAMAN'S COMPLAINT FOR DAMAGES**<br><br>**(Jones Act Negligence, Unseaworthiness, Maintenance, Cure and Unearned Wages, ORS 659A.030 Discrimination, Sexual Assault and Battery)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Eliane Alves Silva ("Plaintiff"), by and through the undersigned counsel, alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff is a seaman and brings this action pursuant to the provisions of 28 U.S.C. §1916 without prepayment of fees and costs and without deposit of security therefor.

2. This action is brought under the admiralty and maritime law as modified by the Jones Act, 46 U.S.C. § 30104. While the matter is cognizable in admiralty pursuant to 28 U.S.C. § 1333, Plaintiff elects to proceed with a jury and does not designate the matter as in admiralty under Federal Rule of Civil Procedure 9(h). This District Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367, as well. There is complete diversity between the parties, and the amount in controversy exceeds the jurisdictional limit of $75,000.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the subject incidents and pattern of tortious conduct took place within this District, primarily on the navigable waters of the Columbia River and shoreside within counties comprising this District.

4. Plaintiff is an adult female citizen of Florida.

5. Upon information and belief, defendant American Cruise Lines, Inc. ("ACL"), was and is a Connecticut corporation regularly conducting business within the District at all material times.

6. ACL was at all times material the employer of defendant Thomas Day. Upon information and belief, ACL employed Thomas Day as the Hotel Manager aboard its cruise ship, AMERICAN SONG. As Hotel Manager, Day was a supervising employee of ACL. Day was acting within the course and scope of his employment with ACL in doing the things hereinafter alleged. He was acting in his managerial or supervisory capacity within the scope of his authority, or, if said conduct was outside the scope of his authority, said conduct was known to, authorized, and/or ratified by ACL.

7. Upon information and belief, defendant Thomas Day was an adult male citizen of Washington.

8. Upon information and belief, at all times material hereto, ACL owned the AMERCAN SONG, Official No. 1282656 ("Vessel" or "AMERICAN SONG"). The AMERICAN SONG was and is an inspected passenger vessel operating upon the Columbia River, navigable waters of the United States, from its homeport in Astoria, Oregon.

9. At all times material hereto, ACL manned, operated, maintained and controlled the AMERICAN SONG.

10. At all times material hereto, ACL employed Plaintiff as a Jones Act seaman in the service of the AMERICAN SONG.

## FACTUAL ALLEGATIONS

11. Before July 2, 2023, ACL hired Plaintiff to work as housekeeper aboard the cruise ship AMERICAN SONG. Plaintiff would live and work aboard the AMERICAN SONG for approximately seven months.

12. On or about July 2, 2023, Plaintiff began work as a housekeeper.

13. Plaintiff reported to the Housekeeping Manager, who, in turn, reported to defendant Hotel Manager Thomas Day ("Manager Day"). Upon information and belief, Manager Day was second only to the AMERICAN SONG's Captain in the Vessel's hierarchy of command. Manager Day therefore had plenary authority over Plaintiff, including the authority to promote, demote and fire Plaintiff, approve raises and manipulate Plaintiff's work schedule and vessel accommodations. Manager Day used

his authority to subject Plaintiff to relentless, unwelcome, exhausting and emotionally damaging physical and sexual advances.

14. For a period of approximately two weeks, Manager Day regularly visited and followed Plaintiff like a shadow, on and off duty, making unwanted sexual advances, *e.g.* the following:

  a. inappropriate comments regarding Plaintiff's physical appearance;

  b. sending text messages with sexual connotations;

  c. suggestive gazes and gestures;

  d. sexual propositions;

  e. offered unwanted gifts of a sexual nature;

  f. sexual or suggestive comments; and

  g. physical contact against Plaintiff's will.

All of the foregoing created an intimidating, hostile and offensive work environment for Plaintiff.

15. After each unwanted physical and verbal advance, Plaintiff rejected Manager Day's advances.

16. On or about the morning of July 7, Manager Day scolded Plaintiff for placing her housekeeping cart in a passenger's stateroom. The Housekeeping Supervisor, however, had instructed Plaintiff to leave the cart there. Plaintiff became frustrated because she was being reprimanded for following her supervisor's directions. Manager Day admonished Plaintiff to respect authority figures if she wanted to work on the boat.

He told her to report back to him at the end of her shift for a cart inspection. As they separated, Manager Day stated, "you look more beautiful when you're angry."

17.     In the evening on or about July 7, after her shift ended, Plaintiff returned to her housekeeping cart, stored in a stateroom, to retrieve a personal item. Manager Day followed her into the stateroom and inquired whether she had "packed her bags," implying her employment was in jeopardy from the incident that morning. Manager Day then softened his tone, telling Plaintiff that he had been watching her daily. Manager Day complemented her physical appearance. When Plaintiff sensed Manager's intentions were untoward, she attempted to leave the stateroom. As she left, Manager Day grabbed her, pulled her toward him, and licked her ear and neck before forcing his mouth onto hers. Plaintiff exclaimed "Let me go" until Manager Day released his grasp. From this point, Plaintiff began to fear for her safety from another assault and/or battery at the hands of Manager Day.

18.     On or about July 8, Plaintiff informed a female supervisor from another department, believed to be named Marylynn ("Supervisor"), about the events of the prior day. Plaintiff took her to the stateroom where the assault and/or battery took place.

19.     On or about July 10, Manager Day told Plaintiff that she must leave the ship and travel to the mall with him. Plaintiff declined three times until Manager Day said she must do as the Manager says. Plaintiff yielded and they boarded an Uber together. Manager Day placed his hand on Plaintiff's leg once they were underway; Plaintiff pushed it away. At the mall, Manager Day grabbed Plaintiff's hand and attempted to pull her into Victoria's Secret; he told her to pick out lingerie for her to wear

for him that evening.  The Housekeeping Supervisor called, telling Manager Day that Plaintiff was needed on the ship.  They returned to the ship.

20. Manager Day told Plaintiff that he would make her the head of the housekeeping department if she would acquiesce to his advances.  He likewise offered to move her to a stateroom without a roommate so they could be alone together.

21. On or about July 12, Plaintiff encountered Manager Day in the hallway.  Manager Day instructed Plaintiff to follow him.  Manager Day opened the door to a stateroom.  Manager Day grabbed Plaintiff by her neck, lifted her so that only her toes touched the ground, and tried to force her into the stateroom.  Plaintiff exclaimed, "Stop, you're hurting me!"  Manager Day released her and apologized.  Plaintiff ran to her room and photographed her neck.  Plaintiff returned to work, crying.

22. On or about the evening of July 13, due to the ongoing harassment, culminating in Manager Day's physical assaults and batteries, Plaintiff was forced to resign.  She tendered her two weeks' notice via email.

23. On or about July 14, Plaintiff reported the harassment and assaults to the Captain of the AMERICAN SONG.  The Captain called together the Supervisor, the Regional Manager (believed to be Coby Duprees) and Plaintiff.  Plaintiff answered their questions.  Plaintiff asked the Captain to call the police.  Plaintiff told the Captain that she was scared and wanted off the cruise ship.

24. The Captain moved Plaintiff to a new stateroom where she remained for a day and a half while the AMERICAN SONG continued transit on the Columbia River.  The Captain told Plaintiff that there would be someone assigned to watch the door to her

stateroom to keep her safe. Plaintiff sent an email to ACL Human Resources, since there was none aboard the ship, setting forth what happened and requesting police assistance.

25. On or about July 15, Plaintiff was told by the Supervisor that Plaintiff would need to sign some paperwork. Plaintiff responded that she was not comfortable signing anything because she does not read and write well in English. (Plaintiff's first language is Portuguese.) The Regional Manager came to Plaintiff's stateroom thereafter. The Regional Manager told Plaintiff that she had twenty-seven minutes to get off the ship. Plaintiff gathered her belongings, took an Uber to PDX, and flew home to Florida.

26. Plaintiff reported the events to the Hernando County Sheriff's Department upon her return home.

27. On July 18, Plaintiff received an email from ACL terminating her employment.

28. On January 8, 2024, Plaintiff filed a Complaint with the Oregon Bureau of Labor and Industries, Civil Rights Division ("BOLI"), alleging Sexual Harassment, both hostile work environment and quid pro quo, sex discrimination, and retaliation. BOLI cross-filed with the EEOC.

## COUNT I AGAINST ACL: JONES ACT - INFLICTION OF EMOTIONAL DISTRESS

29. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 28 set forth above.

30. Plaintiff alleges upon information and belief, during Plaintiff's employment for ACL as a housekeeper in the service of the AMERICAN SONG, Defendant ACL,

through its Managers and Supervisors, and all employees acting on its behalf, caused or permitted infliction of emotional distress upon Plaintiff accompanied by physical contact as set forth above.

31.     Defendants' prurient conduct in unrelenting harassing, tormenting, assaulting and battering Plaintiff was so extreme in degree and so outrageous in character that is went well beyond all bounds of decency and was utterly intolerable in a civilized community.

32.     Said conduct caused Plaintiff to suffer great mental and nervous pain and suffering and emotional distress, and loss of enjoyment of life.  Plaintiff's severe emotional distress, includes, inter alia, diagnoses of PTSD, anxiety and depression, which require and will require in the future, psychological and psychiatric treatment.

33.     Defendants intended, by performing the acts complained of herein, to inflict severe emotional distress on Plaintiff, or that Defendants knew that such severe emotional distress would be certain or substantially certain to result from the conduct.

## COUNT II AGAINST ACL: UNSEAWORTHINESS

34.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 33 set forth above.

35.     Plaintiff alleges upon information and belief, that on or about July 7 and July 12, 2020, while Plaintiff was engaged in the course of her housekeeping duties in service of the AMERICAN SONG, the Vessel was unseaworthy in that, among other things:

    a.    The places where Plaintiff was required to live and work aboard the Vessel were unsafe and perilous due to the presence of Manager Day;

    b.    Plaintiff's housekeeping work was not adequately supervised so as to allow Manager Day to pervasively stalk, harass and intimidate her;

    c.    Sufficient and competent officers and co-employees were lacking;

    d.    Manager Day was not equal in disposition and seamanship to ordinary men of the calling;

    e.    Manager Day had a sexually deviant, wicked disposition, a propensity for evil conduct, and a savage and vicious nature; and

    f.    Manager Day's sexual assaults and batteries on Plaintiff were, consistent with his nature, savage and vicious.

36. As a result of the unseaworthiness of the Vessel, Plaintiff suffered great mental, physical and nervous pain and suffering and emotional distress, and loss of enjoyment of life.

37. She has incurred and will incur medical expenses in the care and treatment of her, inter alia, PTSD, depression, and anxiety, caused by the Vessel's unseaworthiness.

38. As a further consequence of the Vessel's unseaworthiness, Plaintiff has lost wages and her working ability and her earning capacity have been impaired.

## COUNT III AGAINST ACL: MAINTENANCE, CURE AND UNEARNED WAGES

39. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 38 set forth above.

40. Upon Plaintiff's becoming injured and disabled as aforesaid, it became the duty of ACL to furnish and pay for Plaintiff's maintenance and cure, as well as her wages

to the end of the contemplated employment period, but said Defendant callously and unreasonably failed and neglected to make timely and full payment thereof, despite knowledge of Plaintiff's continuing disability.

41. Defendant willfully and wantonly refuses to pay Plaintiff her unearned wages for the seven month long contemplated period of employment, despite Plaintiff's requests for payment.

42. ACL was aware of Plaintiff's psychological and psychiatric treatment, but failed to preauthorize and timely pay for treatment of said treatment, causing delays in Plaintiff's cure. Similarly, ACL failed to timely pay maintenance causing Plaintiff economic insecurity and hardship. Defendant's delays and defaults in furnishing maintenance and cure benefits have caused, contributed to and exacerbated her emotional distress, all to her general damages.

43. Plaintiff is entitled to maintenance and cure on a continuing basis until such time as she reaches maximum medical cure. Plaintiff's emotional injuries, including, inter alia, PTSD, depression, and anxiety required, and will require in the future, medical care.

44. By reason of the premises, Plaintiff has been damaged in sums according to proof for maintenance and cure, the precise amounts of which are presently unascertained, and Plaintiff prays leave to insert the elements of damages in this respect when the same are finally determined.

45. By reason of said willful and wanton disregard of Plaintiff's right to prompt maintenance and cure, Plaintiff was obliged to engage the services of counsel and has

incurred and will continue to incur attorneys' fees and expenses for which Plaintiff is entitled to recover.

46. ACL's willful and wanton disregard of its maintenance and cure obligation warrant the imposition of punitive damages under general maritime law in order to punish and deter Defendant and others.

## COUNT IV AGAINST DEFENDANTS:
## ORS 659A.030 DISCRIMINATION BECAUSE OF SEX

47. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 46 set forth above.

48. Defendant ACL, by and through Manager Day, subjected Plaintiff to quid pro quo sexual harassment by offering employment benefits, including promotion and improved stateroom accommodations, in exchange for a sexual relationship.

49. Defendant ACL, by and through the officers, supervisors and managers aboard the AMERICAN SONG, subjected Plaintiff to unwelcome sex-based harassment that that was sufficiently severe and pervasive to alter the conditions of her employment and create a hostile working environment as defined in OAR 839-005-0030 in violation of ORS 659A.030.  It failed to take corrective measures calculated to end the harassment. Instead, it further discriminated against her by subjecting her to a hostile work environment and forcing her to resign.

50. By the acts described above, Manager Day aided and abetted ACL's discrimination in violation of ORS 659A.030(1)(g).

51. Plaintiff lost valuable wages and benefits because of ACL's discrimination. She also suffered humiliation, injustice, and other emotional distress.

52. Plaintiff is entitled to backpay and compensatory damages in an amount to be determined by the jury.

53. ACL's discrimination was intentional or taken in reckless disregard for Plaintiff's statutorily protected employment rights. Punitive damages in an amount to be determined by the jury should be awarded to punish ACL and to deter it and others from acting in a similar manner in the future.

54. Plaintiff is further entitled to her reasonable attorneys' fees and costs.

### COUNT V AGAINST DEFENDANTS: INTENTIONAL TORT OF SEXUAL ASSAULT

55. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 54 set forth above.

56. During Plaintiff's approximate two week employment aboard the AMERICAN SONG, Plaintiff was the victim of sexual assaults by Manager Day as described above.

57. Manager Day acted with intent to cause either harmful or offensive sexual contact with Plaintiff or to cause Plaintiff apprehension of imminent harmful or offensive sexual contact with Plaintiff, and Plaintiff reasonably believed a harmful or offensive sexual contact would occur.

58. As a result of the intentional tort sexual assaults by Defendants, Plaintiff suffered mental pain and suffering, mental anguish, and loss of enjoyment of life.

59. Plaintiff has incurred and will incur medical expenses in the care and treatment of her PTSD, depression, and anxiety, caused by Defendants' sexual assaults.

60. As a further consequence of Defendants' assaults, Plaintiff has lost wages and her working ability and earning capacity has been impaired.

61. Punitive damages have long been recognized under general maritime law where defendants' actions were intentional, deliberate and/or so wanton and reckless as to demonstrate a conscious disregard of the rights of others. Here, Defendants' conduct warrants the imposition of punitive damages under both Oregon and general maritime law.

## COUNT III AGAINST DEFENDANTS: INTENTIONAL TORT OF SEXUAL BATTERY

62. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 61 set forth above.

63. During Plaintiff's employment aboard the AMERICAN SONG, Plaintiff was the victim of sexual batteries perpetrated by Manager Day on or about July 7 and July 12, 2023 as described above.

64. On or about July 7, Manager Day acted with intent to cause harmful and offensive sexual contact with Plaintiff when he licked Plaintiff's neck and ear and forced his mouth onto hers. Those actions constituted a harmful and offensive sexual contact with Plaintiff.

65. On or about July 12, Manager Day acted with intent to cause either harmful or offensive sexual contact with Plaintiff when grabbed Plaintiff by her neck, lifted her

up and forced her towards the stateroom. Those actions constituted a harmful and offensive sexual contact with Plaintiff.

66. As a result of the intentional tort of sexual battery by Defendants, Plaintiff suffered great mental, physical and nervous pain and suffering and emotional distress, and loss of enjoyment of life.

67. She has incurred and will incur medical expenses in the care and treatment of her, inter alia, PTSD, depression, and anxiety, caused by Defendants' batteries.

68. As a further consequence of the Defendants' batteries, Plaintiff has lost wages and her working ability and her earning capacity have been impaired.

69. Punitive damages have long been recognized under general maritime law where defendants' actions were intentional, deliberate and/or so wanton and reckless as to demonstrate a conscious disregard of the rights of others. Here, Defendants' conduct warrants the imposition of punitive damages under both Oregon and general maritime law.

**WHEREFORE**, Plaintiff prays judgment against Defendants, jointly and severally, as follows:

1. For her general damages according to proof;

2. For all expenses for health care providers according to proof;

3. For all loss of income past and future according to proof;

4. For maintenance, cure and unearned wages according to proof;

5. For reasonable attorneys' fees and expenses according to Oregon and general maritime law;

6. For punitive damages according to Oregon and general maritime law;

7. For prejudgment interest according to general maritime law;

8. For Plaintiff's costs of suit incurred herein; and

9. For such other and further relief as this District Court deems just and fair.

DATED this 22nd day of March, 2024.

BOATLAW, LLP

*/s/ Nicholas J. Neidzwski*_____
Nicholas J. Neidzwski, OSB No. 172584
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands trial by jury of all issues in this cause.